1

2

3

4

5

6

7                          **UNITED STATES DISTRICT COURT**

8                              **DISTRICT OF NEVADA**

9

10   WESTERN WATERSHEDS PROJECT,      )     3:14-cv-00134-HDM-VPC
                                      )
11              Plaintiff,            )
                                      )         ORDER
12   vs.                              )
                                      )
13   AMY LUEDERS, BLM Nevada State    )
     Director, BUREAU OF LAND         )
14   MANAGEMENT, an agency of the     )
     United States, and U.S.          )
15   Department of Interior, an agency )
     of the United States,            )
16
                Defendants.
17   _____

18       Before the court is defendants' motion to strike the

19   declaration of Kenneth Cole and memorandum in support (#53).

20   Plaintiff responded (#58) and defendants replied (#62).

21   **Case Background**

22       Defendants approved the Cave Valley and Lake Valley Watershed

23   Restoration Plan Environmental Assessment ("Restoration Plan") to

24   address the risk of catastrophic wildfire and improve wildlife

25   habitat. The Restoration Plan is intended to reduce fire risk by

26   removing vegetation that is creating hazardous fuel loads for

27   fires. The treatments are also meant to improve habitat for greater

28   sage grouse by removing trees where they are encroaching on

                                      1

sagebrush habitat, removing noxious weeds, and thinning overgrown sagebrush. The rangeland improvements are designed to better distribute livestock and improve rangeland health.

Plaintiff asserts defendants intend to mow, chop, burn, and poison over 146,000 acres of sagebrush habitat; and construct or reconstruct dozens of range developments (including over 400 miles of fences, pipelines, reservoirs, and wells) within vital habitat for the greater sage-grouse. Plaintiff contends the decisions of defendants violate the National Environmental Policy Act ("NEPA").

**Motion Background**

Plaintiff filed a motion for partial summary judgment (#45) that references a simultaneously filed declaration by Kenneth Cole (#46). In his declaration, Cole states he is the NEPA coordinator for plaintiff and his duties include reviewing proposed decisions of the defendants and U.S. Forest Service and "submitting comments . . . and otherwise participating in the comment process for grazing allotments across Nevada and Idaho." (#46 at ¶ 2).

Defendants move to strike the declaration. They contend the case is brought pursuant to the Administrative Procedures Act ("APA") and therefore should be decided based on the administrative record submitted by the agency. They further aver the declaration and the accompanying exhibits were created after the administrative process and administrative appeals were completed in this case and therefore are not part of the administrative record. Plaintiff did not move to supplement the record with these materials, but instead submitted them for the first time when it filed its motion for partial summary judgment.

Plaintiff asserts the declaration was filed to fill in gaps in

the administrative record, particularly regarding defendants'
failure to adequately relate their approved vegetation treatments
to other landscape characteristics in the Cave and Lake valleys,
including major vegetation communities, riparian areas, sage-grouse
habitat, and the precipitation regime. Plaintiff contends
supplementing the administrative record in this manner is
appropriate to explain complex matters involved in the agency
action. Additionally, plaintiff asserts supplementing defendants'
administrative record to include the declaration is also
appropriate because the declaration avoids advancing a new
rationale attacking defendants' decision, and instead consists of
background information explaining the original record.

**The Declaration**

There are three parts to the declaration. In part one, Cole
describes twelve maps he created using information from public
databases and from the administrative record (*Id.* at ¶¶ 5-20). In
the second part, he describes photographs that he took at different
times within or near the Cave valley treatment area in October 2009
and one photograph taken in August 2011 while on a site visit that
preceded defendants' release of the preliminary Restoration Plan
Environmental Assessment ("EA") (*Id.* at ¶¶ 21-27). In the third
part, he analyzes data regarding soil layers in the EA compared to
information in the plan as to where certain treatments would be
conducted, and concluded that defendants would use prescribed fire
in eight locations that receive less than 12 inches of annual
rainfall (*Id.* at ¶¶ 28-29). The plaintiff does not explain why
Cole's declaration was first introduced in its motion for summary
judgment.

**Legal Standard**

Judicial review under the APA is limited to the administrative record, which consists of those materials considered by the agency at the time it made the challenged decision. *Fla. Power & Light v. Lorion*, 470 U.S. 729, 743-44 (1985) ("The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing Court."). In an APA case, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *see also Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.* 450 F.3d 930, 943 (9th Cir. 2006). The Ninth Circuit has stated, "We normally refuse to consider evidence that was not before the agency because 'it inevitably leads the reviewing court to substitute its judgment for that of the agency.'" *Ctr. for Biological Diversity*, 450 F.3d at 943 (quoting *Asarco, Inc. v. Envtl. Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980)).

However, in certain narrow circumstances, extra-record evidence may be considered in an APA case. *See Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996). Extra-record documents may fit into one of these exceptions to record review:

> (1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith.

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of America*

4

*v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1117 (9th Cir. 2007) (citations omitted). These exceptions are to be construed narrowly "so that the exception does not undermine the general rule." *Land Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).

**Part One: The Twelve Maps**

Exhibits 1-12 and ¶¶ 5-20 concern maps Cole created using information drawn from the administrative record. Plaintiff contends the series of maps "visually illustrat[es] [defendants'] approved vegetation treatments relative to other natural resource considerations in the area." Response, p. 7. The maps are helpful, plaintiff argues, because they fill in gaps in the administrative record, which is permissible pursuant to *Lands Council*. ("These limited exceptions operate to identify and plug holes in the administrative record." *Lands Council*, 395 F.3d at 1030.) Plaintiff asserts the maps facilitate an understanding of the complex interrelation of the treatment areas.

Defendants contend the exhibits misconstrue the administrative record and present a misleading picture of the treatment plan. Preliminarily, defendants contend the maps are redundancies of the record. Information that can be extracted from the record is not necessary for a court's review. *See Sw. Ctr. For Biological Diversity*, 100 F.3d at 1451. The additional problem, defendants assert, is the maps presented in the declaration misrepresent the Restoration Plan: Cole gathers information from separate parts of the record and combines them without considering the plan's restrictions.

Exhibits 8 & 9 of the declaration demonstrate the issue. Cole took maps from the record based on information regarding riparian

areas (AR 6491-6492) and combined that information with the
location of different types of treatments as represented by a
different set of maps (AR 7638-7674). Combining these two maps led
to Cole's conclusion that the BLM intends to apply Tebuthiuron
directly over a riparian area.[1] Defendants assert this conclusion
ignores the express language of the environmental assessment and
restoration plan, which restricts BLM from applying Tebuthiuron "in
areas that have soils with clay content greater than 30% or that
have surface water or an elevated groundwater level." AR 7522.
Additionally, the EA states that "a buffer zone of non-treatment
would be included near riparian areas" and that the BLM would
comply with all standard operating procedures in prior planning
documents to "ensure no impacts to riparian and spring resources."
AR 7594.

   Cole constructed maps from the administrative record that make
it appear the restoration plan violates some of its own
restrictions. Defendants contend the restrictions should be applied
independently of the maps in the record and that plaintiff has
combined the maps in a way that inaccurately depicts the
restoration plan. This is a factual question: either the BLM
intends to violate the Tebuthiuron restriction because it doesn't
recognize those zones as riparian areas, or Cole is incorrect
because he fails to realize the maps he uses do not account for the
restrictions BLM has every intention of recognizing. In either
case, the court can consider the argument without the Cole

---

[1]   Tebuthiuron is a herbacide that inhibits photosynthesis. Application
of Tebuthiuron over a riparian area is ill-advised. There is no dispute
on this point.

declaration: the necessary information is in the record.

The only plausible exception to record review that could be applied to exhibits 1-12 would be that supplementing the record is necessary to explain technical terms or complex subject matter. This exception does not apply here as the court does not require the maps to consider the argument.

**Part Two: The Photographs**

Plaintiff has not specifically addressed defendants' motion to strike as it pertains to the photographs offered in ¶¶ 22-27 of the declaration.[2] Pictures in ¶¶ 22-26 depict an area adjacent to the Cave Valley treatment area. Plaintiff uses the pictures to demonstrate the BLM failed to abide by the terms of a different treatment plan project and, consequently, the area was reduced to disturbed soil. The picture in ¶ 27 depicts the Cave Valley treatment area in August 2011.

In applying the exceptions, the court concludes the agency did not rely upon the photographs; the photographs do not explain technical terms or complex subject matter; and plaintiff has not shown bad faith by the agency. Therefore, the only plausible exception that might be argued is that admission of the photographs is necessary to determine whether the agency has considered all relevant factors and explained its decision.

Such an explanation would not be compelling: the pictures have no information detailing exactly where they were taken. Further, four of the pictures were taken in October 2009, and the fifth was taken in August 2011. Defendants represent treatments were

---

[2]   There is no ¶ 25 in the declaration.

completed in those areas during the summer of 2009. Mot. at 6:21. Defendants' projects have long term objectives to be achieved over 5-10 years. Pictures purporting to show the result of the treatments shortly after they were administered are not particularly helpful in demonstrating the success or failure of defendants in achieving their long term goals.

**Part Three: The Prescribed Fire Zones**

This section (¶¶ 28-29) suffers from the same shortcomings as Part One. The restoration plan states prescribed fire will not be used in less than 12-inch precipitation zones. AR 7512. Cole created maps that show prescribed fire will be used in eight different ecosites which receive less than 12 inches of annual precipitation (#46 at 12, ¶ 29). Cole's assertion that those zones will be treated by prescribed fire is based on the maps provided in the record that do not account for the restriction disallowing prescribed fire in less than 12-inch precipitation zones.

Cole gathered data from the USGS Geospatial Data Gateway to determine which areas receive less than 12-inches of precipitation. While the amount of precipitation these zones receive may be disputed, the data in the AR for several of these zones indicates the average amount of annual precipitation varies from under 12-inches to over 12-inches.[3] This information is in the record, and plaintiff should be able to make their argument even without the declaration.

---

[3] For example, site number 028AY043NV receives 10-14'' of annual precipitation. AR 8443.

**Conclusion**

     For the foregoing reasons, the defendants' motion to strike the declaration of Kenneth Cole and memorandum in support (#53) is **GRANTED**.

     IT IS SO ORDERED.

     DATED: This 14th day of May, 2015.

                              _____
                              UNITED STATES DISTRICT JUDGE